## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCES Y. CHOY,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF BROCKTON; Brockton Police Department Detective ERIC CLARK, in his individual capacity; Massachusetts State Police Detective RICHARD SCOTT WARMINGTON, in his individual capacity; Massachusetts State Police Trooper JOHN DUGGAN, in his individual capacity; Massachusetts State Police Chemist JOHN E. DRUGAN, in his individual capacity; Massachusetts State Police Sergeant SCOTT A. BERNA, in his individual capacity; Massachusetts State Police Captain MICHAEL J. CRISP, in his individual capacity; and First Assistant District Attorney FRANK J. MIDDLETON, JR., in his individual capacity,<br><br>        Defendants. | C.A. No. 1:23-cv-10340-RGS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RICHARD SCOTT WARMINGTON, JOHN E. DRUGAN, MICHAEL J. CRISP, AND FRANK MIDDLETON, JR.'S <u>PARTIAL MOTION TO DISMISS THE COMPLAINT</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Richard Scott Warmington, John E. Drugan, Michael J. Crisp, and Frank Middleton, Jr. (hereinafter, the "Moving Defendants") respectfully submit this Memorandum of Law in Support of their Partial Motion to Dismiss Plaintiff's Amended Complaint (the "Complaint") (Dkt. 44).[1]

## INTRODUCTION

This case arises out of the investigation and conviction of Plaintiff Frances Y. Choy ("Plaintiff") for arson and the murder of her parents. She asserts that she was wrongfully convicted for crimes committed by her nephew, Sung Ching ("Kenneth") Choy, and that her constitutional rights were violated during the police investigation. As described in more detail below, certain of Plaintiff's claims against the Moving Defendants pursuant to 42 U.C.S. § 1983 should be dismissed because they are foreclosed by the doctrine of qualified immunity.

First, Plaintiff's due process claim against Deputy First Assistant District Attorney Frank Middleton Jr. (Count I) should be dismissed under qualified immunity because Plaintiff cannot show that he violated her constitutional rights, let alone a right that was "clearly established" at the relevant time. Plaintiff's claim against Deputy First ADA Middleton is premised entirely on the standalone allegation that he authorized a "destructive test" of Plaintiff's clothing to determine whether any flammable accelerants were present. However, simply authorizing a test—one that could have exonerated Plaintiff—does not amount to a plausible violation of Plaintiff's constitutional rights. Moreover, a long line of clearly established precedent confirms

---

[1]     The allegations in the Complaint are treated as true for purposes of this motion only. *See Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020). The Court can also "augment" the allegations in the Complaint "with facts that are matters of public record or otherwise susceptible to judicial notice." *Cruz-Arce v. Mgmt. Admin. Serv.'s Corp.*, 19 F.4th 538, 543 (1st Cir. 2021). Numbered paragraphs in the operative Complaint (Dkt. #44) are cited by paragraph number as "Compl. ¶ [paragraph number]." Unless noted, all internal citations, internal quotation marks, brackets, and ellipses have been omitted from quoted cases.

that destruction of evidence does not by itself violate the constitution where, as here, its exculpatory value was not apparent at the time of destruction.  *See* Argument § I, *infra*.

Second, the Complaint's due process claim against Chemist Drugan (Count I) should be dismissed because the Complaint fails to allege non-conclusory facts that plausibly state a viable claim for relief.  *See id.* § II, *infra*.

Third, qualified immunity also applies to Plaintiff's claim for supervisory liability against Captain Michael Crisp (Count V).  The Complaint's only factual allegation against Captain Crisp is that he received and reviewed police reports about the investigation.  This fails to state a plausible violation of Plaintiff's rights, including because the pleading is devoid of factual allegations showing that he knew (or should have known) of a constitutional violation, that he acted recklessly or with callous indifference, or that his conduct caused the alleged violation of Plaintiff's rights.  Additionally, a reasonable officer in Captain Crisp's position would not have known that reading and relying upon police reports concerning a criminal investigation violated Plaintiff's clearly established constitutional rights.  *See id.* § III, *infra*.

Fourth, Plaintiff's claim for malicious prosecution against Detective Richard Warmington and Chemist John Drugan (Count II) is barred by qualified immunity because the right to be free from malicious prosecution was not "clearly established" until several years after Plaintiff's arrest and subsequent conviction.  *See id.* § IV, *infra*.

Fifth, Plaintiff's failure to intercede claim against Detective Warmington and Chemist Drugan (Count III) is foreclosed by qualified immunity because, outside of the excessive force context, there was no "clearly established" authority at the relevant time imposing a duty on law enforcement officers to intercede if a constitutional violation occurs in their presence.  *See id.* § V, *infra*.

Finally, the Complaint's civil conspiracy claim against Detective Warmington and Chemist Drugan (Count IV) should be dismissed because the Complaint fails to allege non-conclusory facts that plausibly state a viable claim for relief.  *See id.* § VI, *infra*.  Accordingly, the Moving Defendants ask this Court to grant their Partial Motion to Dismiss the Complaint.[2]

## RELEVANT FACTUAL ALLEGATIONS[3]

The Complaint alleges that Plaintiff's parents were killed by a fire that Plaintiff's nephew, Kenneth, intentionally started on April 17, 2003, at the home they all shared in Brockton, Massachusetts.  Compl. ¶ 2.  Based on an investigation by the Brockton Police Department and the Massachusetts State Police, both Plaintiff and Kenneth were arrested and charged with arson and the murder of Plaintiff's parents (who were also Kenneth's grandparents).  *Id.* ¶¶ 3, 34, 98.

The physical evidence recovered at the scene indicated that the fire had been set intentionally.  *See* Compl. ¶¶ 3, 47-48, 62.  Responding officers found several melted plastic containers located throughout the home, and a police K-9 specially trained to detect the presence of certain flammable liquid accelerants signaled that those containers were positive for such a substance.  *Id.* ¶ 47.  Additionally, on the basement stairs, Brockton Police Detective Eric Clark observed two plastic containers that he believed contained gasoline.  *Id.* ¶ 48.

Massachusetts State Police Detective Scott Warmington requested and received permission from Plaintiff and Kenneth to collect the clothing they were wearing when emergency personnel arrived at the home.  Compl. ¶ 55.  The accelerant detection K-9 assessed

---

[2]     The Moving Defendants are not moving to dismiss Count I as to Detective Warmington at this time.

[3]     This section omits factual allegations in the Complaint that are not relevant to the claims asserted against the Moving Defendants.  *See, e.g.*, Compl. ¶¶ 129-35.

Plaintiff's and Kenneth's clothing and detected the presence of an accelerant on Plaintiff's sweatpants. *Id*. ¶¶ 58, 60. The K-9 did not detect an accelerant on Kenneth's clothing. *Id*. ¶ 60.

Detective Warmington and Brockton Police Detective Eric Clark questioned Plaintiff, Kenneth, and others about the fire. *See* Compl. ¶¶ 63-65. Kenneth confessed to his involvement and implicated Plaintiff in starting the fire. *Id*. ¶¶ 84, 86. The police questioned Plaintiff on three occasions on the day of the fire. *Id*. ¶¶ 64, 67, 77-78. After Plaintiff was confronted with Kenneth's statements implicating her in the fire, she stated, "fine I planned it!" *Id*. ¶ 89. She then recanted this statement and denied any involvement in the fire. *Id*. Plaintiff alleges that this conversation was unlawful for several reasons, including because the officers allegedly denied her requests for a lawyer and to use the restroom. *Id*. ¶¶ 78-80.

Based on their statements and the preliminary evidence of an accelerant on Plaintiff's clothing, Plaintiff and Kenneth were placed under arrest for arson and murder. Compl. ¶ 98. According to the police reports, Detective Clark questioned Plaintiff further in the booking area where she confessed to placing containers of gasoline throughout the home. *Id*. ¶¶ 90-91, 94. The Complaint, however, alleges that Plaintiff never made those statements and that the reports were fabricated. *Id*. ¶ 96.

Following Plaintiff's arrest, Massachusetts State Police Chemist John Drugan was assigned to conduct laboratory testing on various items, including Plaintiff's sweatpants. Compl. ¶¶ 99-100, 123. According to his lab notes, before Chemist Drugan conducted his analysis, he was aware that the accelerant detection K-9 had alerted to the possible presence of "Gas" on the sweatpants. *Id*. ¶ 100. Chemist Drugan informed Plymouth County Deputy First Assistant District Attorney Frank Middleton that the laboratory testing would involve a "destructive test" that would not preserve a portion of the sweatpants for subsequent testing by a defense expert.

4

*Id*. ¶ 101.  Deputy First ADA Middleton allegedly approved the use of a destructive test.  *Id*. ¶¶ 101, 153.  Chemist Drugan performed the analysis and concluded that the sweatpants tested positive for the presence of "gasoline residue," which the Complaint alleges was somehow "not support[ed]" by the data produced by the test and therefore "fabricated."  *Id*. ¶¶ 6, 103.  The Complaint alleges that the test data also confirmed the "probable presence" of the chemical compound methyl salicylate, which is an ingredient in commercially available topical painkillers. *Id*. ¶ 103.

The Complaint alleges that Massachusetts State Police Captain Michael Crisp received and read "detailed reports" about the investigation into Plaintiff and Kenneth, and that he "knew or should have known" that the evidence "pointed to Kenneth," and the case against Plaintiff was "built on coercion and lies."  Compl. ¶¶ 125, 128.

Trial against Kenneth commenced in January of 2008 and resulted in a jury verdict of not guilty on all counts.  In January 2008, the case against Plaintiff went to trial and ended in a mistrial.  Compl. ¶ 139.  A second trial occurred in February 2011 and resulted in another mistrial.  *Id*. ¶ 140.  In May 2011, Plaintiff was tried a third time and convicted of arson and murder.  *Id*. ¶ 141.[4]

In September 2020, the Massachusetts Superior Court granted Plaintiff's motion for post-conviction relief and vacated her conviction.  *Id*. ¶¶ 15, 16; *Commonwealth v. Choy*, No. 0383-CR-00300, 2020 WL 10053106, *1-2 (Plymouth Super. Ct. Sept. 17, 2020).  On February 3, 2021, Plaintiff initiated a civil action for wrongful conviction pursuant to G. L. c. 258D, §§ 1-9, which is currently pending.  *See Frances Y. Choy v. Commonwealth*, 2184CV00245 (Suffolk

---

[4]     Prior to the May 2011 trial, Kenneth left the United States for Hong Kong.  Compl. ¶ 141.

Super. Ct.). Thereafter, Plaintiff initiated this action, which asserts the following claims pursuant

to 42 U.C.S. § 1983 against the Moving Defendants in their individual capacities:

- <u>Deputy First Assistant District Attorney Middleton</u>: For authorizing a "destructive test" on Plaintiff's sweatpants, the Complaint asserts one claim against Deputy First ADA Middleton for allegedly violating Plaintiff's right to due process and a fair trial, Compl. ¶¶ 101, 149-57 (Count I);

- <u>Captain Crisp</u>: For receiving and reviewing police reports about the investigation and failing to conclude that the case against Plaintiff was "built on coercion and lies," the Complaint asserts one claim for supervisor liability against Captain Crisp, Compl. ¶¶ 125, 128, 175-81 (Count V);

- <u>Chemist Drugan</u>: For analyzing Plaintiff's sweatpants and concluding that "gasoline residue" was present, which the Complaint alleges was somehow "not support[ed]," Compl. ¶ 102, the Complaint alleges that Chemist Drugan: (1) violated Plaintiff's right to due process and a fair trial, *id*. ¶¶ 149-57 (Count I); (2) engaged in malicious prosecution, *id*. ¶¶ 158-64 (Count II); (3) failed to intercede, *id*. ¶¶ 165-69 (Count III); and (4) engaged in a civil conspiracy, *id*. ¶¶ 170-74 (Count IV); and

- <u>Detective Warmington</u>: For various actions taken during the investigation, the Complaint alleges that Detective Warmington: (1) violated Plaintiff's right to due process and a fair trial, Comp. ¶¶ 149-57 (Count I); (2) engaged in malicious prosecution, *id*. ¶¶ 158-64 (Count II); (3) unlawfully failed to intercede, *id*. ¶¶ 165-69 (Count III); and (4) engaged in a civil conspiracy against her, *id*. ¶¶ 170-74 (Count IV).

## <u>ARGUMENT</u>

The Moving Defendants are entitled to qualified immunity, and accordingly, the claims

asserted against them must be dismissed. Government employees are entitled to qualified

immunity when their alleged "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S.

73, 78-79 (2017). "When a defendant invokes qualified immunity, the burden is on the plaintiff

to show that the defense is inapplicable." *Escalera-Salgado v. United States*, 911 F.3d 38, 41

(1st Cir. 2018).

To overcome a qualified immunity defense, a plaintiff "must make a two-step showing." *Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015).  First, a plaintiff must show that the "defendants violated a statutory or constitutional right." *Id*.  A complaint that "fails under *Iqbal* to plead adequately that the individual defendant[] violated [a plaintiff's] constitutional rights" necessarily "fails the first prong of the qualified immunity analysis." *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); Fed. R. Civ. P. 12(b)(6).  After disregarding allegations that rehash cause-of-action elements or cast legal conclusions in the form of facts, the remaining non-conclusory, non-speculative allegations must plausibly show that each defendant is liable for a constitutional violation.  *See Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020).

Second, to overcome a qualified immunity defense, a plaintiff must also show that "the right" that was allegedly violated "was clearly established at the time [of the alleged violation]." *Rivera-Corraliza*, 794 F.3d at 214-15.  This requires a plaintiff to (1) "identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm," and (2) "demonstrate that an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law."  *Gray v. Cummings*, 917 F.3d 1, 10 (1st Cir. 2019); *Penate v. Hanchett*, 944 F.3d 358, 366 n.5 (1st Cir. 2019) (requiring plaintiff to identify "controlling authority" then in effect, not "non-binding decisions and decisions that postdate the alleged violation"); *Estate of Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022) ("The plaintiff's burden to demonstrate that the law was clearly established is thus a heavy burden indeed.").

A plaintiff must satisfy both "prongs" of this test to overcome a qualified immunity defense.  *Rahim*, 51 F.4th at 410-11.  Thus, courts need not address both prongs if a plaintiff fails

to satisfy one of the prongs. *See Eldredge v. Town of Falmouth*, 662 F.3d 100, 105-07 (1st Cir. 2011) (dismissing claim against one defendant under first prong of qualified immunity inquiry and claim against another defendant under second prong); *Penate*, 944 F.3d at 366. Importantly, qualified immunity is an immunity from suit, rather than a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id*. at 232; *Rahim*, 51 F.4th at 410 (observing that "courts must assess whether a plaintiff's allegations . . . make out a claim sufficient to overcome qualified immunity before . . . authorizing discovery").

As described below, the doctrine of qualified immunity forecloses several of Plaintiff's Section 1983 claims against the Moving Defendants. Specifically, the Complaint's due process claim against Deputy First Assistant District Attorney Middleton (Count I) should be dismissed because the pleading fails to allege facts that plausibly show that he violated Plaintiff's rights, or that he violated a "clearly established" constitutional right. The Complaint's due process claim against Chemist Drugan should be dismissed because the pleading fails to allege facts that plausibly state a viable claim for relief. Plaintiff's claim for supervisory liability against Captain Crisp (Count V) should be dismissed because the Complaint does not allege that he was on notice of a constitutional violation or that he evinced recklessness or callous indifference that was affirmatively linked to a violation of Plaintiff's rights. Plaintiff's claims against Detective Warmington and Chemist Drugan for malicious prosecution (Count II) and failure to intercede (Count III) should be dismissed because the relevant constitutional right was not "clearly established" at the time of Plaintiff's arrest and conviction. Finally, the Complaint's civil

conspiracy claim should be dismissed because the Complaint fails to allege facts that plausibly

state a viable claim for relief.

I.     **PLAINTIFF'S SECTION 1983 DUE PROCESS CLAIM AGAINST DEPUTY FIRST ASSISTANT DISTRICT ATTORNEY MIDDLETON (COUNT I) IS BARRED BY QUALIFIED IMMUNITY.**

   A.     **The Complaint Fails to Allege Plausible Facts Showing that Deputy First Assistant District Attorney Middleton Violated Plaintiff's Constitutional Rights.**

   The Complaint's sole factual allegation against Deputy First ADA Middleton fails to

state a plausible claim that he violated Plaintiff's constitutional rights.  Fed. R. Civ. P. 12(b)(6).

A claim under 42 U.S.C. § 1983 "requires three elements for liability: deprivation of a right, a

causal connection between the actor and the deprivation, and state action."  *Lucero v.

Evangelidis*, 333 F. Supp. 3d 1, 3 (D. Mass. 2018).  The only factual allegation asserted against

Deputy First ADA Middleton is that he "approved the destructive test" of Plaintiff's sweatpants

"rather than opting for preserving a portion of the item."  Compl. ¶ 101.  The Complaint offers

no other factual allegations concerning Deputy First ADA Middleton.  For example, the

Complaint does not allege that he played any further role in testing Plaintiff's sweatpants, or that

he was involved in any other facet of the investigation or trial.  The only allegation is that he

authorized a test.  At the time, he had no way of knowing whether the test would yield

inculpatory, exculpatory, or inconclusive evidence.  *See Arizona v. Youngblood*, 488 U.S. 51, 58

(1988) (holding that "unless a criminal defendant can show bad faith," an official's "failure to

preserve potentially useful evidence does not constitute a denial of due process of law");

*California v. Trombetta*, 467 U.S. 479, 487-88 (1984) (holding that the constitution does not

require preservation of breath samples from suspected drunk drivers because their exculpatory

value was not apparent before destruction).  The Complaint's standalone allegation that

Middleton authorized a destructive test fails to plausibly allege that he violated Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 678-79.

      **B.**      **Plaintiff Cannot Show that Deputy First ADA Middleton Violated a "Clearly Established" Right.**

Plaintiff's claim against Deputy First ADA Middleton must also be dismissed for the additional reason that his alleged conduct in April 2003 did not violate a constitutional right that was "clearly established" at the time. Plaintiff cannot identify specific, controlling authority that "send[s] a clear signal" that authorizing a destructive test *per se* "falls short of the constitutional norm," nor can she demonstrate that a reasonable Deputy First Assistant District Attorney would have known that authorizing such a test violated the rule of law. *Gray*, 917 F.3d at 10. Indeed, there is a long line of precedent confirming that the destruction of potentially useful evidence does not by itself violate the constitution where, at the time of destruction, its exculpatory value was not apparent. *See Magraw v. Roden*, 743 F.3d 1, 8 (1st Cir. 2014) (citing *Youngblood* and *Trombetta*); *DiBenedetto v. Hall*, 272 F.3d 1, 12-13 (1st Cir. 2001) (finding "no constitutional violation" for destructive test). A reasonable person in Deputy First ADA Middleton's position would have no reason to believe conducting a test would violate the constitution. Because testing Plaintiff's sweatpants could have resulted in exculpatory, inculpatory, or inconclusive evidence, the decision to proceed with a destructive test does not amount to a constitutional violation, and Deputy First ADA Middleton is entitled to qualified immunity.

**II.**      **PLAINTIFF'S SECTION 1983 DUE PROCESS CLAIM AGAINST CHEMIST DRUGAN (COUNT I) IS BARRED BY QUALIFIED IMMUNITY.**

The Complaint fails to state a plausible claim that Chemist Drugan violated Plaintiff's constitutional rights by testing her sweatpants and opining that "gasoline residue" was present. Specifically, the Complaint alludes to unidentified "testing data" and alleges that a conclusion concerning the presence of gasoline residue was somehow "not support[ed]" and, therefore,

"fabricated." Compl. ¶¶ 6, 102. These allegations—that Chemist Drugan's opinion was "not support[ed]" and "fabricated"—are conclusory and unsupported by any well-pled facts. *See Lyman*, 954 F.3d at 360 (assessing only "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts").[5] Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the Complaint should be dismissed for having "alleged—but . . . not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Count I should be dismissed as to Chemist Drugan.

## III. PLAINTIFF'S SECTION 1983 CLAIM FOR SUPERVISORY LIABILITY AGAINST CAPTAIN CRISP (COUNT V) IS BARRED BY QUALIFIED IMMUNITY.

### A. The Complaint Fails to Allege Plausible Facts Showing Captain Crisp Violated Plaintiff's Constitutional Rights.

The Complaint's sparse allegations concerning Captain Crisp fail to state a plausible claim that he violated Plaintiff's constitutional rights through his performance of routine supervisory duties. Because "vicarious liability is inapplicable to *Bivens* and § 1983 suits," *Iqbal*, 566 U.S. at 676, "a supervisor's liability must be premised on his or her own acts or omissions and does not attach automatically even if a subordinate is found liable." *Justiniano v. Walker*, 986 F.3d 11, 20-21 (1st Cir. 2021) (observing that supervisory liability "is a difficult standard to meet"). "[B]road allegations against high-ranking government officials fail to state a claim." *Feliciano-Hernandez*, 663 F.3d at 534 (collecting cases).

---

[5]      Plaintiff retained an analytical chemist in her post-conviction case to evaluate Chemist Drugan's analysis. *Choy*, 2020 WL 10053106, *6-7. While Plaintiff's expert opined that the scientific data and literature did not support a conclusion that gasoline residue was present on the sweatpants, the Superior Court did not impugn Chemist Drugan or his opinion. *Id*. Rather, the Superior Court concluded that Plaintiff "was prejudiced in her defense when no expert witness was called to present *an alternative evaluation of the underlying test results*." *Id*. at 7 (emphasis added).

To plead a viable § 1983 claim for supervisory liability, a plaintiff must first "show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights," *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016), and that the supervisor "had actual or constructive notice of the constitutional violation." *Feliciano-Hernandez*, 663 F.3d at 533. A plaintiff must next show that the supervisor's action or inaction can be "characterized as gross negligence amounting to deliberate indifference" and "was affirmatively linked to" the subordinate's behavior. *Justiniano*, 986 F.3d at 20. "Mere negligence" on the part of a supervisor "will not suffice: the supervisor's conduct must evince reckless or callous indifference to the constitutional rights of others." *Guadalupe-Baez*, 819 F.3d at 515. Additionally, a complaint must "allege a strong causal connection, or an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor." *Penate*, 944 F.3d at 367-68. "[T]he causal link between a supervisor's conduct and the constitutional violation must be solid," such that "the supervisor's conduct led inexorably to the constitutional violation." *Guadalupe-Baez*, 819 F.3d at 515. The Complaint's allegations as to Captain Crisp fall short at every step.

As an initial matter, the Complaint fails to allege that any supervisory relationship existed between Captain Crisp and any other Defendant. *Penate*, 944 F.3d at 367 (observing that supervisory "[l]iability cannot rest on a defendant's position of authority alone"). Indeed, the Complaint's only factual allegation against Captain Crisp is that he "monitored the investigation" insofar as he "received" and "read" "numerous, detailed reports about the investigation." Compl. ¶¶ 125, 128. Based on this allegation, the Complaint concludes that Captain Crisp "knew or should have known" that the case against Plaintiff "was built on coercion and lies," *id*. ¶ 128, and that he somehow failed "to adequately supervise, discipline, and train" the troopers conducting the investigation. *Id*. ¶¶ 176-79. Notably absent from the Complaint are any factual allegations

showing that (1) Captain Crisp was on notice of a constitutional violation; (2) he acted recklessly or with callous indifference towards Plaintiff's (or anyone's) constitutional rights; or (3) a "solid causal link" exists between his conduct and the alleged constitutional violation. *Justiniano*, 986 F.3d at 22.

The Complaint's failure to plausibly show that Captain Crisp received notice of an underlying constitutional violation is fatal. "Actual or constructive knowledge of a rights violation is a prerequisite for stating any claim" for supervisor liability. *Feliciano-Hernandez*, 663 F.3d at 535; *Penate*, 944 F.3d at 367 ("[N]otice is a salient consideration in determining the existence of supervisor liability."). The fact that Captain Crisp read police reports does not plausibly show that he was on notice of any constitutional violation. Indeed, the pleading is devoid of any factual allegations that could plausibly show that a violation of Plaintiff's constitutional rights was evident from those reports, or that those reports somehow indicated a violation would occur in the future. This is dispositive. *Penate*, 944 F.3d at 368 ("[G]eneral allegations do not show [the supervisor] was on notice that his supervisory failings amounted to a violation of the constitutional rights of others").

Moreover, the Complaint fails to plead any facts that could support the conclusion Captain Crisp was reckless, callously indifferent, or manifestly unreasonable concerning Plaintiff's (or anyone's) constitutional rights. "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 92 (1st Cir. 1994); *Penate*, 944 F.3d at 368 (allegations that a supervisor was "negligent in his supervisory duties . . . do[] not suffice"). The Complaint fails to allege any facts plausibly showing that Captain acted recklessly or with deliberate indifference. *Lipsett v.*

*Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988) ("[O]ne cannot make a deliberate or conscious choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps."); *Feliciano-Hernandez*, 663 F.3d at 535.  All the Complaint offers are broad, conclusory legal conclusions cast as facts.  *See, e.g.*, Compl. ¶ 179 ("The fact that [Captain Crisp] failed to train and supervise [his alleged] subordinates . . . demonstrates deliberate indifference and reckless disregard . . . .").  These allegations are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are "not entitled to the assumption of truth" and are routinely rejected as insufficient to state a plausible claim.  *See Iqbal*, 556 U.S. at 678-81; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (conclusory labels and a "formulaic recitation of the elements of a cause of action" fail to state a claim).

Finally, the Complaint makes no effort to allege any non-speculative facts that could plausibly demonstrate that Captain Crisp's review of police reports "led inexorably" to any constitutional violation.  *Feliciano-Hernandez*, 663 F.3d at 534 (requiring a plausible, "solid" causal link between supervisor's conduct and a rights violation); *Penate*, 944 F.3d at 368 (holding that "general allegations do not show [the supervisor] was on notice that his supervisory failings amounted to a violation of the constitutional rights of others").  Because the Complaint fails to allege facts plausibly showing that Captain Crisp was on notice of a constitutional violation, evinced a reckless or callous indifference towards constitutional rights, or caused a violation of plaintiff's rights, the Complaint does not state a plausible claim.  Fed. R. Civ. P. 12(b)(6).  Accordingly, Count V of the Complaint should be dismissed as to Captain Crisp.

### B.   Plaintiff Cannot Show that Captain Crisp Violated a "Clearly Established" Right.

The Complaint's claim for supervisory liability against Captain Crisp should also be dismissed because his conduct did not violate a constitutional right that was clearly established at

the time.   Plaintiff cannot show that an "objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." *Gray*, 917 F.3d at 10; *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").   "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017).   Here, a reasonable officer in Captain Crisp's position would not have known that reading and relying upon police reports concerning a criminal investigation violated Plaintiff's clearly established constitutional rights.   *See White*, 580 U.S. at 79 (requiring that "the clearly established law must be particularized to the facts of the case," not a "violation of extremely abstract rights").   Based on the Complaint, there is simply no precedent that placed "beyond debate" the conclusion that Captain Crisp violated Plaintiff's rights.   Even if isolated violations of the constitution were somehow apparent from the reports, the First Circuit has "repeatedly cautioned that knowledge of isolated instances of even confirmed unconstitutional activity is ordinarily insufficient to show deliberate indifference." *Penate*, 944 F.3d at 368 (applying qualified immunity to drug lab supervisor where allegations "were all plausibly subject to explanations which would not reasonably trigger further investigation").   Accordingly, Count V against Captain Crisp should be dismissed.

IV.   **PLAINTIFF'S SECTION 1983 CLAIM FOR MALICIOUS PROSECUTION AGAINST DETECTIVE WARMINGTON AND CHEMIST DRUGAN (COUNT II) IS BARRED BY QUALIFIED IMMUNITY.**

Count II of the Complaint is foreclosed by qualified immunity because a constitutional right to be free from malicious prosecution was not clearly established until 2013, several years after Plaintiff's April 2003 arrest and subsequent conviction.   Compl. ¶¶ 158-64.   To overcome a qualified immunity defense, Plaintiff must show that the constitutional right that was allegedly

15

violated was "clearly established" at the time of the violation. *Schand v. City of Springfield*, 380 F. Supp. 3d 106, 134 (D. Mass. 2019). To do so, Plaintiff must identify "cases of controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority." *Barton v. Clancy*, 632 F. 3d 9, 22 (1st Cir. 2011). "It is not enough that the rule is suggested by then-existing precedent." *Wesby*, 138 S. Ct. at 590. Rather, the precedent must be "beyond debate." *Id*. Whether framed as a violation of the Fourteenth or Fourth Amendment, *see* Compl. ¶¶ 159, Plaintiff cannot establish that a constitutional right to be free from malicious prosecution was "clearly established" at the time of the alleged violation.

In 1994—nearly a decade before Plaintiff's arrest—the Supreme Court "firmly closed the door on substantive due process as a vehicle for bringing" malicious prosecution claims pursuant to § 1983. *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 98 (1st Cir. 2013) (citing *Albright v. Oliver*, 510 U.S. 266 (1994) (holding that "substantive due process . . . can afford [the plaintiff] no relief" for a malicious prosecution claim)). Accordingly, Plaintiff's malicious prosecution claim under the Fourteenth Amendment is foreclosed by qualified immunity because that right has never been "clearly established."

A malicious prosecution claim under the Fourth Amendment suffers from the same defect in that it was not "clearly established" until a decade after Plaintiff's arrest. In 2013, the First Circuit, "*for the first time*," determined that "a Fourth Amendment malicious prosecution claim" exists. *Hernandez-Cuevas*, 723 F.3d at 93-94 (emphasis added). The Court observed that, prior to its 2013 opinion, "[n]either this circuit nor the Supreme Court has ever explicitly determined that the Fourth Amendment encompasses a malicious prosecution claim." *Id*. at 97; *see also Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010) (observing that it "remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth

Amendment and section 1983").  Plaintiff was arrested in April 2003 and convicted in May 2011, Compl. ¶¶ 123, 141, several years before the First Circuit's 2013 decision in *Hernandez-Cuevas*.  Because the First Circuit did not clearly establish that malicious prosecution could form the basis of a constitutional claim until years after Plaintiff's conviction, the Complaint's § 1983 claim for malicious prosecution (Count II) must be dismissed as to Detective Warmington and Chemist Drugan.  *See Schand*, 380 F. Supp. 3d at 135 (applying qualified immunity because until *Hernandez-Cuevas* "the law did not clearly establish that malicious prosecution could for the basis a § 1983 claim"); *Echavarria v. Roach*, No. 16-cv-11118-ADB, 2017 WL 3928270, at *8 (D. Mass. Sept. 7, 2017) ("Since the Fourth Amendment right to be free from malicious prosecution was not clearly established until 2013, the individual defendants are entitled to qualified immunity from Plaintiff's § 1983 claim that Defendants engaged in malicious prosecution . . . .").

## V.   PLAINTIFF'S SECTION 1983 CLAIM FOR FAILURE TO INTERCEDE AGAINST DETECTIVE WARMINGTON AND CHEMIST DRUGAN (COUNT III) IS BARRED BY QUALIFIED IMMUNITY.

Qualified immunity also applies to Plaintiff's claim for failure to intercede because, outside of the excessive force context, there was no "clearly established" authority in 2003 imposing a duty on law enforcement officers to intercede if a constitutional violation occurs in their presence.  For a right to be "clearly established," the "rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby,* 138 S. Ct. at 589-90.  Outside of the excessive force context, a constitutional right imposing a duty to intercede has never been "clearly established" in this jurisdiction.  *See Schand*, 380 F. Supp. 3d at 135 (holding that "the duty to intercede, in a context not involving allegations of excessive force, is not—even as of this date—sufficiently clearly established to deprive Defendants of the protection of qualified immunity"); *Echavarria*, 2017 WL 3928270, at

*11 (holding that qualified immunity applies to a failure to intervene claim because "within the First Circuit, it remains uncertain whether an officer has a duty to intervene in cases that do not concern excessive force").  Accordingly, Detective Warmington and Chemist Drugan are entitled to qualified immunity on Plaintiff's failure to intercede claim (Count III).

## VI.   PLAINTIFF'S SECTION 1983 CLAIM FOR CIVIL CONSPIRACY AGAINST DETECTIVE WARMINGTON AND CHEMIST DRUGAN (COUNT IV) IS BARRED BY QUALIFIED IMMUNITY.

To state a civil rights conspiracy under section 1983, Plaintiff must allege that at least two Defendants "act[ed] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a" constitutional violation "upon another, and an overt act that results in damages."  *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008); *Diaz v. Devlin*, 229 F.Supp.3d 101, 111 (D. Mass. 2008).  A "claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions."  *Diaz*, 229 F. Supp. 3d at 111.  Relying exclusively on conclusory labels and a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, the Complaint alleges that Chemist Drugan and Detective Warmington "agreed among themselves to act in concert" to deprive Plaintiff of her rights.  Compl. ¶ 171.  This allegation, which composes the foundation for Plaintiff's conspiracy claim, is insufficient to state a viable claim.  *See Lyman*, 954 F.3d at 360 (rejecting "legal labels and conclusions" and "cause-of-action elements").  Accordingly, Count IV should be dismissed.

## CONCLUSION

For the reasons stated, the Moving Defendants respectfully request that the Court grant their Partial Motion to Dismiss the Complaint.

Respectfully submitted,

RICHARD SCOTT WARMINGTON, JOHN E. DRUGAN, MICHAEL J. CRISP, AND FRANK MIDDLETON, JR.
By their Attorneys

ANDREA JOY CAMPBELL
ATTORNEY GENERAL


*/s/ Michael Shiposh*
Erica Morin (BBO# 687471)
Nicholas Rose (BBO# 670421)
Michael Shiposh (BBO# 680131)
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, 18th Floor
Boston, MA  02108
Tel: (617) 727-2200
erica.morin@mass.gov
nicholas.rose@mass.gov
michael.shiposh@mass.gov

Dated: April 21, 2023


## CERTIFICATE OF SERVICE

I, Michael Shiposh, Assistant Attorney General, hereby certify that I have this day, April 21, 2023, served the foregoing document upon all registered participants via this Court's electronic filing system.

*/s/ Michael Shiposh*
Michael Shiposh
Assistant Attorney General